20-2965. Mr. Aquino we'll begin with you whenever you're ready. Thank you Your Honor and may it please the court. This is a habeas case where once again the Wisconsin Court of Appeals had failed to properly apply the prejudice test for ineffective assistance of counsel under Strickland. Now the Wisconsin Court assumed that the prosecutor's multiple comments on Mr. Thill's silence were in error because the state didn't argue otherwise. So it decided the appeals strictly on prejudice grounds. But however its prejudice analysis was an unreasonable and contrary application of the Strickland prejudice test because it either side, let alone consider what the impact of the improper comments on Mr. Thill's silence were on the evidence that was admitted. The court merely listed all of the evidence in one paragraph introduced on either side and said that the comments were questioning were isolated in the context of all the other evidence. This is, you know, Strickland requires measuring the quality of the evidence not just the quantity of the evidence. And I think our best case on this point is the Tolliver v. McCautry which we cite in the reply brief 539 F3D 766 where this court said that on the one hand the Wisconsin Court did recognize how the attorney error quote would have affected the jury's evaluation close quote of certain evidence. It was a violation of Strickland because quote the court failed to consider the implications of this observation within the context of Mr. Tolliver's defense as well as the weakness of the state's evidence. Here we don't even have the court in any way articulating what the prejudicial effect is of the prosecutor's improper comments on the defendant's silence. I, as I said out in the brief, these kinds of comments you know wrongly suggest a consciousness of guilt when really the defendant may just not trust that the police or not trust his own ability to communicate clearly. The Court of Appeals here identified four reasons why your client was not prejudiced. The comments were isolated, there was a significant amount of other evidence that your client was guilty and he identified the testimony of Gray and Martin and the child victim that the jury acquitted your client on the other charges. Why is that an unreasonable application of Strickland? The court gave a fair amount of detail and identified those four reasons. But I think there's a here and actually weighing the evidence and considering you know how the error and I'm sorry to interrupt given the deference of AEDPA, how is that an unreasonable application? It sounds like you're saying the court should have weighed it more, should have analyzed it more, but that's not what we look at with AEDPA deference. Well the issue is is that it didn't weigh it at all. Okay it didn't say anything about the strength of the defendant's case or the strength of the prosecution's case. It just said there was a lot of evidence. For example, and again I would rely heavily on the Tolliver case where there was a recognition of what the nature of the prejudice but no effort to weigh it. Strickland talks about how there needs to be this weighing because an error where there's overwhelming evidence of guilt, okay, is not going to create prejudice. But when you know the balance is a little or the scales are a little more balanced it could very well create that reasonable probability of the different outcome. And so there needs why it's unreasonable is that there was no effort to weigh the evidence. As we point out there were significant holes in the state's case. There were issues with the child's statement, how it appeared to there was very unusual. She had, for example, a journal that neither of the investigators, excuse me, or interviewers had ever seen before. There was the way the whole reporting came down was very unusual. There was, and I apologize to make this clear, he was convicted of having sexual contact with the child on the way from the child's mother's home to his own home while they were in a van together. And there's evidence that something, that a sexual assault occurred was the fact that the girl called home and was all upset. Well, it doesn't make any sense. Why would, if the sexual assault just happened, why would Mr. There was physical evidence as well, which was identified by the court. I mean, it sounds like you're asking us to reweigh that, which again, especially with Ed Poddeference, it's not what we do. Well, it's not, again, I would say that if it's not a reweighing, it's a weighing in the first instance, there was no weighing. Yes, there was physical evidence, but there were issues with the physical evidence. And the explanation here, where what the court didn't, again, was not consistent with Strickland was it didn't consider that the nature of the prejudice went to the nature of the defense, which is defense was that this physical evidence was, um, was planted on the underwear. Um, and that, you know, that defense depended on the jury believing, you know, Mr. Thill, it depended on his credibility. And so these statements about his silence, um, unfairly impeached his credibility. Didn't Mr. Thill's claim have enormous credibility problems? Uh, in that it depended on believing that even though Gray's tubes were tied, which meant Thill didn't need to prevent an immediate pregnancy. And even though he knew, uh, she was much more, um, invested in the relationship than he was, he allowed her to collect his sperm in a cup. I mean, really? Well, I would say, you know, it's, um, I think in all of these cases, whenever there's an allocation of framing, you know, it's, um, it may seem unusual, but, um, you know, I would say, you know, it's up for the jury to decide, um, you know, the likelihood of that, you know, I would say, you know, you know, when we're talking about these kinds of crimes, you know, there are people who do depraved things, there are people who do very unusual things, you know, and it is not, you know, we live in a big country, there are people, you know, who will possibly save sperm, you know, uh, the way that, um, you know, Mr. Thill believes that, um, you know, the mother of the child did. So it's, um, certainly, you know, that was, that was one of the challenges of the defense, but, you know, he was allowed to, he should have been allowed to make that defense without also having to contend with the prosecutor improperly commenting on his silence and his failure to do exactly what, um, what happened in the Doyle case, which was that there was, um, you know, there was a comment on the failure to advance this, um, you know, the framing that was framed defense during his initial, um, uh, conversations with the police. Um, I would like to reserve the rest of my time for rebuttal if I could. Thank you. Ms. Potts. Good morning. May it please the court. My name is Abigail Potts. I represent the respondent here in this appeal. The crux of this case from our perspective is really not the prosecutor's comments or our defense counsel's trial strategy. The crux of this case is that the Wisconsin Court of Appeals did its job here and did it reasonably. Ultimately the Wisconsin Court of Appeals applied the correct law. It applied Strickland very expressly and it came to a reasonable decision. Now it's the state's position that Mr. Thill has failed to establish either prong of the Strickland analysis. And I will just momentarily mention that, um, contrary to what opposing counsel said, the state did not concede deficient performance at the state level. The state did not concede that there was not deficient performance. However, the state Court of Appeals simply decided to, um, decided that this case could begin and end on prejudice. That is also what the district court acknowledged. And that is our position as well. This court can, can basically begin and end on the prejudice prong of Strickland. And since we don't need to go further, we shouldn't. Stepping back just for a second, I will say something that I know this court already knows. Habeas is a very extreme remedy. It's there to protect against lawless state action. And it is there to make sure that a state court conviction and criminal proceedings aren't so egregious as to actually be in conflict with the United States Supreme Court precedent defining our constitutional rights. With that in mind, no reasonable jurists would agree that the Wisconsin Court of Appeals decision conflicts with United States Supreme Court precedent. And Phil can't do that on this record. In this case here, every judge that has evaluated Phil's claim has agreed that Phil has failed to establish sufficient prejudice to warrant relief. And most importantly here, the Wisconsin Court of Appeals applied Strickland and reasonably determined that the prosecutor's comments did not affect the jury's verdict. And in so doing, consistent with Strickland, the court looked at the totality of the trial. And this is a point that opposing counsel brings up a lot saying that the court, the state court misapplied the prejudice prong simply because it did not list or cite or compare every piece of evidence for a multi-day trial. But that is not what's required here. What the court did was completely consistent with Strickland because what the court did is look at the trial as a whole and specifically identified elements of the trial that related to its conclusion. It noted that this was a multi-day trial, 20 witnesses, DNA evidence found on the victims undergarments. And with all that in mind, the court concluded that even if the prosecutor's comments were a Doyle violation, there wasn't a substantial likelihood of a different result. And in fact, the court said they were confident that it did not affect the verdict. One of the pieces of evidence that the court considered and this court touched on during opposing counsel's argument was the actual verdict. And I think that's actually a pretty important piece of the record that supports the state court's decision in this case. The state court recognized that the jury here acquitted Mr. Thill on the repeated acts charge, repeated acts of sexual contact, and only convicted him on the charge for which there was DNA evidence. And what I think is reasonable is the court's conclusion that that really shows what this case was about. This case had nothing to do with the prosecutor's brief and isolated comments on Thill's, what Thill did or did not tell investigators. This case came down to the evidence, came down to the DNA evidence in this case. And the verdict in this case supports that. And as part of the record then, this all supports the court of appeals determination that Mr. Thill simply did not show a substantial likelihood of a different result. And that's what Strickland requires. Not a conceivable different result, a substantial likelihood of a different result. So in that sense, the state court of appeals decision is consistent with Strickland. And honestly, your honors, that's where this case can and should end from the state's perspective. There are lots, we could go into deficient performance, but as this court has noted in several cases, where a case can be disposed of on prejudice, it should be. And that's what the state court of appeals did. Now, one other thing I would just mention again, I mentioned it a little bit earlier, but opposing counsel mentioned that the state, or seemed to imply that the state conceded deficient performance. That's not the case below. The state did argue that there was no deficient performance in this case, as we have on appeal here. And the basis of that argument really is the Mockner hearing testimony, where we have a Mockner hearing, and where we have a post conviction court that expressly finds that defense counsel made a conscious decision not to object, so as to not call attention to the comments, even if we don't really like that finding on federal habeas review, that's really not what we're here for is the second guess that. And I would submit that the record, the actual Mockner hearing testimony from trial counsel is sufficient support for that finding to make it within those bounds of reasonable that are under Ed Part review right now. So it's the state's position that given the Mockner hearing testimony, Phil cannot show deficient performance either, because his attorney gave a viable, reasonable trial strategy for not objecting to the testimony by the by the prosecutor. And so those are, you know, I would gladly answer more deficient performance. But again, from our perspective, this should end at prejudice. So unless the court has additional questions for me on that prong, I'm happy to sit down a little early. Any questions? No, I don't think so. Thank you, Miss Pat. All right. Thank you. Mr. Aquino, your rebuttal, please. You're on mute. Apologize. Yeah, I want to discuss a little bit more about this, the DNA evidence. You know, it wasn't, the state did not address the DNA evidence really in its response. But I wanted to point out a few things that I had in my, my where the DNA evidence was found on the underwear versus where the, you know, the child said that the, how the sexual contact occurred. Okay, there was testimony that nothing, nothing came out of his penis. But there was, but there were the DNA evidence was found on the underwear, but no DNA evidence was found on her genitalia at all. And there was no evidence of any trauma to her penis. And those sites are in my brief. And also, you know, this, we didn't get into this into the briefs, but they, the police searched the, his car or the van where this allegedly occurred, and they found no traces of semen in the van. And this was on page 113 of the, of 6-12, I believe the second day of trial, excuse me. There's other, yes, there was that DNA evidence. And also the, as the, I guess also the analyst testified, there was just a little bit of it on the underwear. There was some DNA evidence, but when all of the, there were, when the nature of his, of the error and how it affected his credibility, and his you know, there was a substantial probability of a different outcome. I see my time is up. Thank you, Mr. Aquino. Thanks to both counsel. The case will be taken under advisement. Thank you.